## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROBERT WILHOIT, CHRISTINA HARGROVE, GIJI MISCHEL DENNARD, JULIE MAGERS, MEGAN SMALL, REGINA RUSGROVE, and LISA MARSHALL, individually, and on behalf of the class and all others similarly situated,

        Plaintiffs,

        v.

ASTRAZENECA PHARMACEUTICALS, LP,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 22-1634-GBW-SRF

## REPORT AND RECOMMENDATION

Pending before the court in this civil action for violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 *et seq.*, are the following motions: (1) the partial motion to dismiss the first amended complaint ("FAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), filed by AstraZeneca Pharmaceuticals, LP ("Defendant") (D.I. 22);[1] (2) the motion to strike the Title VII class claims and the ADEA collective action claims, filed by Defendant (D.I. 25);[2] and (3) the motion to conditionally certify a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), filed by plaintiffs Robert Wilhoit, Christina Hargrove, Giji Mischel Dennard, Julie Magers, Megan Small, Regina Rusgrove, and Lisa

---

[1] The briefing and filings associated with the pending motion to dismiss are found at D.I. 23, D.I. 24, D.I. 29, and D.I. 33.

[2] The briefing and filings associated with the pending motion to strike are found at D.I. 26, D.I. 31, D.I. 32, D.I. 34, D.I. 35, D.I. 36, D.I. 59, D.I. 60, D.I. 61, D.I. 62, and D.I. 64.

1

Marshall (collectively, "Plaintiffs") (D.I. 37).[3]  For the following reasons, I recommend that the court GRANT Defendant's partial motion to dismiss, GRANT Defendant's motion to strike, and DENY without prejudice Plaintiffs' motion to conditionally certify a collective action.

## I.   BACKGROUND

This action arises out of the circumstances surrounding Defendant's termination of numerous employees who objected to receiving a COVID-19 vaccine on religious grounds.  (D.I. 19 at ¶¶ 1-2)  The FAC alleges that, beginning in 2018, Defendant started pursuing strategies to cultivate a younger workforce.  (*Id.* at ¶¶ 5, 34)  According to former employees, a large reduction in force occurred in December of 2020, resulting in the termination of approximately 500 employees, most of whom were over 40.  (D.I. 38, Ex. E at ¶ 8; Ex. H at ¶ 8)

In meetings throughout 2021, Defendant emphasized a push to decrease the average age of its employees.  (D.I. 19 at ¶¶ 4-5, 30-33)  For example, in March of 2021, Defendant's U.S. Director of Sales, Mike Hartman,[4] gave a nationwide sales presentation in which he stated that the average age of Defendant's employees was too high, and the percentage of employees under age 30 needed to increase.  (*Id.* at ¶¶ 4, 30)  In November of 2021, Defendant's Head of Inclusion and Diversity, Arrastene Henry, shared a region-wide presentation indicating that Defendant would be working to increase the percentage of employees under the age of 30.  (*Id.* at ¶¶ 5, 32)

The FAC alleges that Defendant used the COVID-19 pandemic as an opportunity to cull its workforce of older employees by imposing a vaccine mandate it knew would

---

[3] The briefing and filings associated with the motion to conditionally certify a collective action are found at D.I. 38, D.I. 47, D.I. 48, D.I. 49, D.I. 50, D.I. 51, D.I. 52, D.I. 53, D.I. 54, D.I. 56, D.I. 57, and D.I. 58.

[4] Defendant disputes the FAC's characterization of Mr. Hartman's role, arguing that he led just one of nineteen sales teams for Defendant.  (D.I. 47 at 9)

disproportionately impact older, religious employees. (*Id.* at ¶ 6) Defendant's efforts began in September of 2021, when a policy was implemented requiring all unvaccinated employees to submit weekly COVID-19 test results. (*Id.* at ¶¶ 50, 58) Around the same time, Defendant required employees to report their vaccination status. (*Id.* at ¶ 51) Unvaccinated employees were required to indicate whether they intended to get vaccinated and, if not, to report whether they declined the vaccine for religious, medical, or "other" reasons. (*Id.*)

On January 31, 2022, Defendant announced a mandate requiring all U.S.-based employees to be vaccinated against COVID-19. (*Id.* at ¶ 63) The announcement set a deadline of February 28, 2022 for employees to request any religious or medical exemptions. (*Id.* at ¶¶ 63, 79) The FAC alleges that Defendant was aware the vaccine mandate would disproportionately impact older, religious employees based on the survey results from the fall of 2021. (*Id.* at ¶¶ 59, 65) Defendant also maintained contact tracing records that showed which employees previously contracted COVID-19 and therefore had natural immunity. (*Id.* at ¶¶ 52, 60)

Defendant informed Plaintiffs of its religious accommodation denials on March 31, 2022. (*Id.* at ¶ 98) The FAC avers that Defendant failed to use uniform standards to review the requests and responses to secondary questions, and medical exemption requests and accommodations were granted at higher rates than religious requests. (*Id.* at ¶¶ 81-83, 91, 95-99) The denial letters did not identify grounds for questioning the sincerity or religious nature of Plaintiffs' beliefs. (*Id.* at ¶ 100-01) Nonetheless, the letters informed Plaintiffs that their employment would be terminated in April of 2022 without severance. (*Id.* at ¶ 102) On April 29, 2022, Defendant fired more than 200 unvaccinated employees. (*Id.* at ¶ 116)

Plaintiffs brought this lawsuit on December 26, 2022 and filed the FAC on April 10, 2023. (D.I. 1; D.I. 19)  The FAC alleges individual and collective causes of action under the ADEA for disparate treatment (Count I) and disparate impact (Count II). (D.I. 19 at ¶¶ 250-73)Counts III and IV of the FAC assert causes of action for religious discrimination under Title VII for disparate treatment and/or failure to accommodate.  (*Id.* at ¶¶ 274-309)  Count III pertains to the "Natural Immunity Religious Class," defined as all former employees of Defendant who had natural immunity on April 29, 2022 and also sought religious exemptions and accommodations from the vaccine mandate, but were terminated following the denial of their exemption requests.  (*Id.* at ¶ 230)  Count IV is brought on behalf of the "Religious Process Class," defined as all former employees of Defendant who sought religious exemptions and/or accommodations from the vaccine mandate, but were terminated following the denial of their accommodation requests based on an assessment of responses to automated questions.  (*Id.* at ¶ 240)

On April 24, 2023, Defendant filed the motion to dismiss Count III of the FAC and a motion to strike the Title VII class claims and the ADEA collective action claims.  (D.I. 22; D.I. 25)  On September 8, 2023, Plaintiff filed a motion to conditionally certify the collective action. (D.I. 37)  The pending motions were referred to the undersigned judicial officer on October 4, 2023.  (D.I. 44)

## II.   DISCUSSION

### A.  Partial Motion to Dismiss

#### 1.  Legal standard

Rule 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  To state a claim upon which relief

can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231.

### 2. Analysis

Defendant moves to dismiss Count III of the FAC, which alleges disparate treatment and/or failure to accommodate members of the proposed Natural Immunity Religious Class under Title VII. (D.I. 23) To state a *prima facie* case for religious discrimination under Title VII based on a disparate treatment theory, a plaintiff must plead that (1) the employee is "a member of a protected class," (2) the employee suffered an adverse employment action, and (3)

"nonmembers of the protected class were treated more favorably." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 281-82 (3d Cir. 2001). To establish a *prima facie* case for religious discrimination under Title VII based on a failure to accommodate theory, the plaintiff must show that (1) the employee "held a sincere religious belief that conflicted with a job requirement," (2) the employee "informed [the] employer of the conflict," and (3) the employee "was disciplined for failing to comply with the conflicting requirement." *Fallon v. Mercy Cath. Med. Ctr. of Southeastern Pa.*, 877 F.3d 487, 490 (3d Cir. 2017).

Defendant argues that Count III of the FAC should be dismissed for failure to state a claim because Plaintiffs' purported "natural immunity" cannot justify a religious exemption from a vaccine mandate or form the basis for protection under Title VII. (D.I. 23 at 7-8) In support of its position, Defendant cites recent case authorities arising in the context of COVID-19 vaccine mandates which explain that natural immunity does not constitute a religious rationale for purposes of Title VII. (*Id.* at 11-13) According to Defendant, the FAC does not identify any similarly situated non-religious individuals who had natural immunity and were either omitted from the vaccine requirement or were permitted to keep their jobs despite remaining unvaccinated. (*Id.* at 8)

I recommend that the court dismiss Count III as it pertains to Plaintiffs' disparate treatment claim because the FAC does not contain any plausible allegations suggesting that nonmembers of the protected class were treated more favorably than Plaintiffs in accordance with the third element of the claim. *See Abramson*, 260 F.3d at 281-82. Plaintiffs argue that unlawful discrimination may be inferred because "[i]t was a highly irrational business decision to terminate productive employees who had been immunized naturally, while allowing secular employees who had been immunized artificially to keep their jobs[.]" (D.I. 29 at 13) But this

6

argument highlights the fact that the FAC compares individuals who were not similarly situated, namely, unvaccinated employees claiming a religious exemption and vaccinated employees who did not claim an exemption because they complied with the mandate. (D.I. 19 at ¶ 285) ("Plaintiffs . . . were treated differently than similarly situated secular employees who were immunized through vaccination."). The FAC does not allege that non-religious employees who had natural immunity but failed to comply with the vaccine mandate were permitted to keep their jobs.[5] Thus, Count III of the FAC fails to state disparate treatment claim under Title VII.

Plaintiffs argue that they "are not required to show non-members of the protected class were treated more favorably to generate an inference of unlawful discrimination," citing an unpublished decision outlining the requirements for stating a claim for sex discrimination under Title VII. (D.I. 29 at 11-12) (citing *Vermeer v. Univ. of Del.*, C.A. No. 21-1500-RGA, 2022 WL 4103970, at *3 (D. Del. Sept. 8, 2022)). Plaintiffs do not distinguish or otherwise discuss Third Circuit precedent stating that a plaintiff asserting a Title VII claim under a disparate treatment theory must demonstrate that "nonmembers of the protected class were treated more favorably." *Abramson*, 260 F.3d at 281-82; *see also Maher v. Bayhealth Med. Ctr., Inc.*, C.A. No. 22-1551-RGA, 2024 WL 406494, at *3 (D. Del. Feb. 2, 2024) (quoting the elements of a religious discrimination disparate treatment claim from *Abramson* in the context of a COVID-19 vaccination mandate religious exemption case).

---

[5] Plaintiffs concede that natural immunity status is not a protected category for purposes of Count III. (D.I. 29 at 3, 10)  Instead, Plaintiffs argue that their membership in a protected religious class "*plus* their natural immunity when terminated demonstrates [Defendant's] Title VII violations were even more egregious than the religious discrimination outlined in Count IV." (*Id.*) (emphasis in original).  Courts that have considered similar allegations have generally confirmed that "those who have not been vaccinated against COVID-19 are not a 'protected group' under Title VII." *Gage v. Mayo Clinic*, 2023 WL 3230986, at *2 (D. Ariz. May 3, 2023).

I further recommend that the court dismiss Count III of the FAC to the extent that it asserts a claim for failure to accommodate under Title VII. Plaintiffs suggest that Defendant does not challenge the portion of Count III directed to Defendant's alleged failure to accommodate the Natural Immunity Religious Class. (D.I. 29 at 8-9) But Defendant explains that the failure to accommodate theory at Count III cannot survive because it is duplicative of the facially unchallenged allegations at Count IV of the FAC.[6] (D.I. 33 at 5) Because the only difference between the failure to accommodate claims at Counts III and IV is the assertion of natural immunity in Count III, and because natural immunity does not provide an independent basis for asserting a Title VII claim, Defendant maintains that Plaintiffs' failure to accommodate allegations at Count III must be dismissed. (*Id.* at 5-6)

Plaintiffs' allegations about natural immunity are not religious beliefs. *See Maher*, 2024 WL 406494, at *4 (citing cases confirming that medical judgments about natural immunity and the COVID-19 vaccine do not qualify as religious beliefs); *see also Winans v. Cox Auto., Inc.*, --- F. Supp. 3d ----, 2023 WL 2975872, at *4 (E.D. Pa. Apr. 17, 2023) (dismissing religious discrimination claim based on the plaintiff's "purely scientific, personal, and medical objections to the vaccine, including his belief that the vaccine is ineffective and his concerns with potential side effects."). Beliefs about the safety and efficacy of vaccines do not "address fundamental and ultimate questions having to do with deep and imponderable matters[.]" *Fallon*, 877 F.3d at 492. Instead, Plaintiffs' natural immunity averments reflect a personal or medical belief that one's own immune system provides adequate protection against the virus without the need for vaccination. Linking that belief to religion does not change its status for purposes of invoking

---

[6] Defendant has not moved to dismiss Count IV pursuant to Rule 12(b)(6) on the basis of any pleading deficiency.

protection under Title VII. *See Ellison v. Inova Health Care Servs.*, --- F. Supp. 3d ----, 2023 WL 6038016, at *5 (E.D. Va. Sept. 14, 2023) (dismissing a religious accommodation claim where the plaintiff's own statements, "though couched in religious terms," showed that he "refused the vaccines based on concerns of vaccine safety."); *Passarella v. Aspirus, Inc.*, 2023 WL 2455681, at *6 (W.D. Wis. Mar. 10, 2023) ("[T]he use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion.").

Plaintiffs' averments in Count III confirm that their objections based on natural immunity are not rooted in their religious beliefs. The FAC states that Defendant "forced" Plaintiffs "into a sham religious accommodation process, which, considering their natural immunity, should never have occurred, especially considering that [Defendant] knew . . . of the relative strength of natural immunity[.]" (D.I. 19 at ¶ 281; *see also* ¶ 280 ("[B]ecause of their natural immunity, the sincerity and religious nature of their beliefs in conflict with the Mandate should have never been evaluated or questioned in the first place.")). These allegations show that Plaintiffs' beliefs about the effects of natural immunity are separate from their religious objections to the vaccine mandate.

The only allegations in Count III that are not otherwise covered by Count IV of the FAC are Plaintiffs' assertions about their natural immunity. Plaintiffs identify portions of the FAC describing religious objections to the COVID-19 vaccine beyond those relating to natural immunity, such as their objections based on beliefs about abortion and fetal cell lines. (D.I. 29 at 9 (citing D.I. 19 at ¶¶ 141, 163, 208)) But Plaintiffs concede that these averments are encompassed by Plaintiffs' failure to accommodate claim at Count IV of the FAC: "Count IV . . . in almost all material respects presents the same religious discrimination claims [Defendant] now moves to dismiss under Count III," the major distinction being that "Count III pertains to

religious employees who possessed natural immunity when they were terminated, while Count IV encompasses all religious employees [Defendant] terminated, regardless of natural immunity." (D.I. 29 at 2-3)  Defendant does not challenge the sufficiency of the pleadings as to Count IV. (D.I. 33 at 1, 5)  Consequently, the impact of dismissing Count III is narrowly limited to Plaintiffs' assertion that their natural immunity objection is religious in nature.

Plaintiffs maintain that their natural immunity demonstrates widespread pretext because Defendant could have accommodated Plaintiffs in accordance with its health and safety goals without requiring vaccination. (D.I. 29 at 9-10)  But pretext is not an independent cause of action.  Rather, it is a consideration at the third step of the *McDonnell Douglas* burden-shifting framework applied to religious discrimination claims. *See Banner v. Dep't of Health & Human Servs. Div. for the Visually Impaired*, C.A. No. 13-1625-LPS, 2018 WL 1377095, at *4 (D. Del. Mar. 19, 2018) (explaining that a plaintiff must demonstrate pretext only after a *prima facie* case of discrimination is established and the employer proffers a non-discriminatory reason for its actions).  The FAC's averments on pretext are not confined to Count III and are equally applicable to Count IV. (*See, e.g.*, D.I. 19 at ¶¶ 71-78)  In fact, Plaintiffs' answering brief cites allegations from Count IV "detailing [the] pretextual nature of 'workplace safety' justification[s]" in support of their position that Count III should not be dismissed. (D.I. 29 at 10 (citing D.I. 19 at ¶ 304, which avers that Defendant's "underlying rationale for the Mandate— workplace safety—was pretext.")).  Because Plaintiffs' contentions about pretext fail to establish a separate cause of action for religious discrimination under Title VII, I recommend that the court dismiss the religious accommodation claim at Count III of the FAC.

·

### B. Motion to Strike

Defendant also moves to strike the Title VII class allegations and the ADEA collective action allegations from the FAC. (D.I. 31) Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rules 12(f) and 23(c)(1)(A) provide a court with authority to strike class allegations from the complaint before a motion for class certification is filed. *In re Railway Indus. Employee No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 495 (W.D. Pa. 2019); *see also Johnson v. Organo Gold Int'l, Inc.*, C.A. No. 15-390-LPS, 2016 WL 2771124, at *2 (D. Del. May 13, 2016). Similarly, a court may strike collective action allegations under the Fair Labor Standards Action ("FLSA") pursuant to Rule 12(f) and 29 U.S.C. § 216(b). *See McKnight v. Honeywell Safety Prods. USA, Inc.*, 2016 WL 8310381, at *2-3 (D.R.I. Nov. 9, 2016); *see also Garcia v. Sedanos Market, Inc.*, 2019 WL 13089700, at *3 (S.D. Fla. July 17, 2019). The effect of granting a motion to strike class from a complaint is, "for all practical purposes, identical to an opposition to a motion for class certification." *Richardson v. Verde Energy USA, Inc.*, 354 F. Supp. 3d 639, 654 (E.D. Pa. 2018) (quoting *Korman v. The Walking Co.*, 503 F. Supp. 2d 755, 762-63 (E.D. Pa. 2007)).

### 1. Title VII class certification allegations under Fed. R. Civ. P. 23

Defendant moves to strike the FAC's class certification allegations as they pertain to Plaintiffs' Title VII religious discrimination claims at Counts III and IV. (D.I. 31 at 7-13) Rule 23(c)(1)(A) states, "[a]t an early practicable time . . . the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Under Rule 23(d)(1)(D), "the court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly[.]"

Fed. R. Civ. P. 23(d)(1)(D).  Although the class certification analysis under Rule 23 is generally

rigorous, the Supreme Court has recognized that the appropriateness of class certification may be

"plain enough from the pleadings" in certain cases.  *Gen. Tel. Co. of the Southwest v. Falcon*,

457 U.S. 147, 160 (1980).  Accordingly, a motion to strike class allegations under Rule

23(d)(1)(D) may be granted where the complaint itself shows that the requirements for

maintaining a class cannot be met, and no amount of discovery or time will resolve the

deficiencies in the class allegations.  *Almond v. Janssen Pharms., Inc.*, 337 F.R.D. 90, 99 (E.D.

Pa. 2020).

      Plaintiffs seeking class certification must establish the four elements of Rule 23(a) and

one subpart of Rule 23(b).  Fed. R. Civ. P. 23.  Under Rule 23(a), the plaintiffs must show that

(1) the class is so numerous joinder of all the members is impracticable ("numerosity"); (2) there

are questions of law or fact common to the class ("commonality"); (3) the parties' claims or

defenses are typical of the class ("typicality"); and (4) the representative parties fairly and

adequately protect the interests of the class ("adequacy").  *Warfarin Sodium Antitrust Litig.*, 391

F.3d 516, 527 (3d Cir. 2004).  Once the Rule 23(a) requirements are satisfied, the plaintiffs must

show that the class certification is appropriate under one of the three subparts of Rule 23(b).

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Here, Defendant argues that

Plaintiffs have failed to satisfy subpart (b)(3), which requires a showing that "questions of law or

fact common to class members predominate over any questions affecting only individual

members," and that "a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

      Defendant contends that the class allegations in the FAC should be stricken because they

do not satisfy the commonality requirement of Rule 23(a).  (D.I. 31 at 6-13)  To satisfy the

commonality requirement, the "claims must depend upon a common contention," and the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). According to Defendant, the Title VII claims do not lend themselves to class resolution because questions of "[w]hether each Plaintiff held a sincere religious belief and whether any such belief further precluded them from complying with the vaccine mandate are questions unique to that individual." (D.I. 31 at 7)

Plaintiffs respond that common questions will drive the resolution of their claims in this matter because Defendant handled religious accommodation requests in a standardized manner, did not engage in individualized assessments of Plaintiffs' exemption requests, and denied the requests and terminated Plaintiffs for the same reasons on the same day. (D.I. 34 at 5)  Plaintiffs argue that issues surrounding the religious sincerity of their objections and matters of undue hardship can be resolved on a class-wide basis because discovery will allow Plaintiffs to refine the class to exclude those with nonreligious objections, and Defendant has already accommodated unvaccinated employees without suffering undue hardship. (*Id.* at 9-14)

I recommend that the court grant Defendant's motion to strike the class certification allegations for Counts III[7] and IV of the FAC because Plaintiffs cannot satisfy the Rule 23(a) commonality requirement. *See Ellison*, 2023 WL 6038016, at *11 (striking class claims for failure to satisfy the commonality requirement at the pleadings stage because the personal nature of the plaintiffs' religious beliefs "do not lend themselves to common resolution."). The FAC

---

[7] For the reasons set forth at § II.A.2, *supra*, I recommend that the court dismiss Count III of the complaint. If this recommendation is adopted, an assessment of the class certification allegations as they pertain to Count III is unnecessary. If, however, Count III is not dismissed, I recommend granting Defendant's motion to strike the class certification allegations for Count III.

sets forth separate subsections for each Plaintiff identifying several different religious bases for objecting to the vaccine mandate, including guidance from the Holy Spirit (D.I. 19 at ¶¶ 122, 141, 192, 208), objections to abortion and/or aborted fetal cell lines (*id.* at ¶¶ 141, 163, 208), and an unwillingness to alter one's God-given immune system (*id.* at ¶ 179).  As illustrated by the structure of the FAC, and as discussed in *Ellison*, the analysis of whether each putative class member's objection to the COVID-19 vaccine is based on their own religious beliefs is individualized, and it may vary even among Plaintiffs raising the same objection.  *Ellison*, 2023 WL 6038016, at *11 (explaining that facially identical abortion-based religious objections to the COVID-19 vaccine may nonetheless lead to different results); *see also Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 196 (3d Cir. 2009) (holding that the requisite individualized assessment of whether class members are "qualified" under the ADA was "incompatible with the requirements of Rule 23 in this case[.]").

A recent series of cases from this district addressing motions to dismiss causes of action for failure to accommodate religious beliefs regarding the COVID-19 vaccine further confirms the individualized nature of the inquiry:

| Citation | Outcome of Motion to Dismiss | Nature of religious objection |
|---|---|---|
| *Harvey v. Bayhealth Med. Ctr., Inc.*, 2024 WL 456498 (D. Del. Feb. 5, 2024) | Granted; dismissed with prejudice | Body is a temple of the Holy Spirit |
| *Lane v. Bayhealth Med. Ctr., Inc.*, 2024 WL 456499 (D. Del. Feb. 5, 2024) | Granted; dismissed with prejudice | God-given immune system Body is a temple of the Holy Spirit |
| *Berna v. Bayhealth Med. Ctr., Inc.*, 2024 WL 456420 (D. Del. Feb. 5, 2024) | Granted; dismissed with prejudice | God-given immune system Image of God Body is a temple of the Holy Spirit |
| *McCarthy v. Bayhealth Med. Ctr., Inc.*, 2024 WL 406440 (D. Del. Feb. 2, 2024) | Granted; dismissed with prejudice | Body is a temple of the Holy Spirit |

14

| | | |
|---|---|---|
| *Caruano v. Bayhealth Med. Ctr., Inc.*, 2024 WL 406438 (D. Del. Feb. 2, 2024) | Granted; dismissed with prejudice | Body is a temple of the Holy Spirit<br>Image of God<br>God-given immune system |
| *Maher v. Bayhealth Med. Ctr., Inc.*, 2024 WL 406494 (D. Del. Feb. 2, 2024) | Granted; dismissed with prejudice | God-given immune system<br>Body is a temple of the Holy Spirit |
| *Lamb v. Bayhealth Med. Ctr., Inc.*, 2024 WL 359239 (D. Del. Jan. 31, 2024) | Granted; dismissed without prejudice | Body is a temple of the Holy Spirit<br>Fetal stem cells |
| *Isaacs v. Bayhealth Med. Ctr., Inc.*, 2024 WL 359244 (D. Del. Jan. 31, 2024) | Granted; dismissed without prejudice | Body is a temple of the Holy Spirit<br>Fetal stem cells<br>God-given conscience |
| *Maloney v. Bayhealth Med. Ctr., Inc.*, 2024 WL 359465 (D. Del. Jan. 31, 2024) | Granted; dismissed with prejudice | Body is a temple of the Holy Spirit<br>Image of God |
| *Wilson v. Bayhealth Med. Ctr., Inc.*, 2024 WL 359464 (D. Del. Jan. 31, 2024) | Granted; dismissed without prejudice | God-given immune system<br>Fetal stem cells |
| *Hand v. Bayhealth Med. Ctr., Inc.*, 2024 WL 359245 (D. Del. Jan. 31, 2024) | Granted; dismissed with prejudice | Body is a temple of the Holy Spirit<br>mRNA changing DNA |
| *Roberts v. Bayhealth Med. Ctr., Inc.*, 2024 WL 359467 (D. Del. Jan. 31, 2024) | Granted; dismissed without prejudice | Body is a temple of the Holy Spirit<br>Follow conscience<br>Fetal stem cells |
| *Thornton v. Bayhealth Med. Ctr., Inc.*, 2024 WL 325326 (D. Del. Jan. 29, 2024) | Denied | Fetal stem cells |
| *Thompson v. Bayhealth Med. Ctr., Inc.*, 2024 WL 325288 (D. Del. Jan. 29, 2024) | Denied | Fetal stem cells |
| *Wharton v. Bayhealth Med. Ctr., Inc.*, 2024 WL 325333 (D. Del. Jan. 29, 2024) | Denied | Fetal stem cells |
| *Griffin v. Bayhealth Med. Ctr., Inc.*, 2024 WL 325272 (D. Del. Jan. 29, 2024) | Denied | Fetal stem cells |
| *White v. Bayhealth Med. Ctr., Inc.*, 2024 WL 325334 (D. Del. Jan. 29, 2024) | Denied | Fetal stem cells |
| *White v. Bayhealth Med. Ctr., Inc.*, 2024 WL 307692 (D. Del. Jan. 26, 2024) | Denied | Fetal stem cells |
| *Hernandez v. Bayhealth Med. Ctr., Inc.*, 2024 WL 278180 (D. Del. Jan. 25, 2024) | Denied | Fetal stem cells |

| | | |
|---|---|---|
| *Massotti v. Bayhealth Med. Ctr., Inc.*, 2024 WL 278208 (D. Del. Jan. 25, 2024) | Denied | Fetal stem cells |
| *Proud v. Bayhealth Med. Ctr., Inc.*, 2024 WL 278216 (D. Del. Jan. 25, 2024) | Denied | Fetal stem cells |
| *Aiken v. Bayhealth Med. Ctr., Inc.*, 2024 WL 278182 (D. Del. Jan. 25, 2024) | Denied | Fetal stem cells |
| *Osborne v. Bayhealth Med. Ctr., Inc.*, 2024 WL 278209 (D. Del. Jan. 25, 2024) | Granted; dismissed with prejudice | Follow conscience |
| *McDowell v. Bayhealth Med. Ctr., Inc.*, 2024 WL 278187 (D. Del. Jan. 25, 2024) | Granted; dismissed with prejudice | Body is a temple of the Holy Spirit |

Even when a plaintiff raises the same stated religious belief, this chart shows that an individualized analysis is nonetheless required and the outcome may differ among plaintiffs. *Compare Hernandez v. Bayhealth Med. Ctr., Inc.*, 2024 WL 278180 (D. Del. Jan. 25, 2024) (denying a motion to dismiss where the plaintiff's articulated religious beliefs condemning abortion were adequately pled), *with Lamb v. Bayhealth Med. Ctr., Inc.*, 2024 WL 359239, at *4 (D. Del. Jan. 31, 2024) (dismissing without prejudice a failure to accommodate claim that did not explain how the plaintiff's religious belief about respect for life was related to her objection to the vaccine). In accordance with the *Bayhealth Medical Center* cases, cases from other districts challenging Defendant's same COVID-19 vaccine mandate confirm that an individualized assessment of each plaintiff's accommodation request is necessary. *See Friend v. AstraZeneca Pharms. LP*, 2023 WL 3390820, at *3 (D. Md. May 11, 2023); *Foshee v. AstraZeneca Pharms. LP*, 2023 WL 6845425, at *5 (D. Md. Oct. 17, 2023).

In the instant case, Plaintiffs' articulated religious objections to the vaccine mandate are as varied as those raised by the plaintiffs in the *Bayhealth Medical Center* cases cited above:

| Plaintiff | Religious Objection |
|---|---|
| Robert Wilhoit | Guidance from the Holy Spirit (D.I. 19 at ¶ 122) |
| Giji Mischel Dennard | Guidance from the Holy Spirit<br>Fetal stem cells (D.I. 19 at ¶ 141) |
| Christina Hargrove | No religious objection identified |
| Julie Magers | Fetal stem cells (D.I. 19 at ¶ 163) |
| Megan Small | Body is a temple of the Holy Spirit<br>God-given immune system (D.I. 19 at ¶ 179) |
| Regina Rusgrove | Guidance from the Holy Spirit (D.I. 19 at ¶ 192) |
| Lisa Marshall | Guidance from the Holy Spirit<br>Fetal stem cells (D.I. 19 at ¶ 208) |

To establish commonality under Rule 23(a), "[i]t is not . . . sufficient merely to show a factual or legal question that must be answered for each class member. The proponent of class certification must show that class members share a common question whose answer is amenable to class-wide resolution." *Gaston v. Exelon Corp.*, 247 F.R.D. 75, 82 (E.D. Pa. 2007). Here, there is little uniformity among the religious beliefs raised by each Plaintiff. Even among Plaintiffs who raise the same religious objection, an analysis of whether each Plaintiff's objection is truly rooted in religion and/or whether the belief is sincerely held will require an individualized assessment, as demonstrated by the *Bayhealth Medical Center* cases. Plaintiffs' claims are not suitable for class resolution because the common questions of law and fact do not apply to all class members and are not "amenable to class-wide proof." *Id.*; *see Falcon*, 457 U.S. at 155 (explaining that the issues in a class action should "turn on questions of law applicable in the same manner to each member of the class.").

Plaintiffs allege that the class allegations for the disparate treatment claim at Count IV of the FAC should nonetheless survive Defendant's motion to strike because there are common questions regarding whether the circumstances of Plaintiffs' termination give rise to an inference

of intentional discrimination.[8]  (D.I. 34 at 6, 8-9)  However, Plaintiffs acknowledge that any commonality under the first and fourth elements of a disparate treatment claim will not be revealed until discovery is taken.  (*Id.* at 7-9)  According to Plaintiffs, determining whether they are members of a protected class under the first element requires an individualized review of Defendant's records, as "it is certainly conceivable that [Defendant] did in fact determine after individually reviewing exemption requests that select employees *lacked* religious sincerity."  (*Id.* at 7) (emphasis in original).  With respect to the fourth element, Plaintiffs note that inferences to be drawn from the circumstances surrounding their termination will depend on discovery showing whether Defendant's vaccinated employees "contracted COVID-19 at the same or higher rates than unvaccinated religious employees[.]"  (*Id.* at 8)  Because Plaintiffs' speculative allegations of commonality require an individualized inquiry dependent on extensive discovery, Plaintiffs' disparate treatment claim at Count IV of the FAC is not amenable to class-wide resolution.

Having determined that the commonality requirement is not met, the court need not reach the remaining class certification elements under Rule 23(a) or the issues of predominance and superiority under Rule 23(b)(3). *See Jaroslawicz v. M&T Bank Corp.*, C.A. No. 15-897-EJW, 2024 WL 474846, at *29 (D. Del. Feb. 7, 2024) (declining to reach an analysis of numerosity, superiority, typicality, adequacy, and ascertainability based on the plaintiffs' failure to satisfy the commonality and predominance elements of Rule 23); *see also Gaston*, 247 F.R.D. at 88 (finding

.

---

[8] As previously discussed at § II.A.2, *supra*, Plaintiffs' articulation of the fourth element of a disparate treatment claim is not consistent with Third Circuit precedent requiring a showing that "nonmembers of the protected class were treated more favorably." *Abramson*, 260 F.3d at 281-82.

that the plaintiffs' failure to meet the commonality requirement under Rule 23(a)(2) was, by itself, dispositive of the significantly more rigorous predominance requirement of Rule 23(b)(3)).

### 2. ADEA collective action allegations

Defendant also moves to strike Plaintiffs' collective action allegations regarding Counts I and II of the FAC because the proposed collective lacks definition and the FLSA claims are derivative of the Title VII claims. (D.I. 31 at 17–20) For the reasons set forth at § II.C, *infra*, I recommend that the court deny Plaintiffs' motion for conditional certification of the collective. In keeping with this recommendation, I further recommend that the court grant Defendant's motion to strike the collective action allegations.

### C. Motion for Conditional Certification of the Collective

With respect to the age discrimination claims brought under the ADEA at Counts I and II of the FAC, Plaintiffs move for conditional certification of a collective action.[9] (D.I. 37) The ADEA incorporates the collective action provisions of the FLSA. *See* 29 U.S.C. § 626(b) (incorporating 29 U.S.C. § 216(b)); *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 379 (3d Cir. 2007). Accordingly, when a named plaintiff files a complaint containing FLSA collective action allegations, the court must determine "whether those who purport to join the collective action are 'similarly situated' as intended by the statute." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016).

---

[9] The Third Circuit has highlighted the differences between class certification under Rule 23 and certification of a collective action under § 216(b). *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 376 (3d Cir. 2022). Unlike class certification, the certification of a collective does not create an independent legal entity. *Id.* Moreover, FLSA collective actions have an "essentially individual character," which means that each opt-in plaintiff may advance their claims in court, and the defendants may assert "highly individualized" defenses against each of the opt-in plaintiffs. *Id.* at 377.

To determine whether the members of the proposed collective action are similarly situated, the court engages in a two-step certification process.  At issue here is the first step of conditional certification, which requires "a 'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected [the named plaintiff] and the manner in which it affected the proposed collective action members." *Id.* (quoting *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012)).  The court's determination on conditional certification is discretionary, and "[a] denial at the conditional certification stage is not necessarily a final determination of whether the matter may proceed as a collective action." *Id.* at 224-25.

Here, Plaintiffs have not met their burden to make a modest showing that the members of the proposed collective are similarly situated.  Plaintiffs allege that Defendant "instituted and actively pursued a corporate-wide policy to lower the average age of its workforce" based on the statements made by Mr. Hartman and Mr. Henry during corporate presentations in 2021.  (D.I. 38 at 1, 10; Exs. E, F, G, I)  However, there is no factual nexus between statements about cultivating a younger workforce and the adverse employment actions suffered by the proposed collective.  Plaintiffs do not allege that either of the presenters was directly involved in hiring or termination decisions, and any link between their presentations and individual managers' subsequent termination decisions is "mere speculation." *Duffy v. Sodexho, Inc.*, 2006 WL 3025958, at *3 (E.D. Pa. Oct. 20, 2006).

Any purported link is further undermined by the fact that the presentations were not temporally proximate to the relevant termination decisions. *See Hodczak v. Latrobe Specialty Steel Co.*, 451 F. App'x 238, 241 (3d Cir. 2011) (concluding that comments which "were temporally remote from the decision to discharge Appellants" qualified as no more than "stray

remarks," as opposed to a discriminatory policy).  The presentations were given throughout

2021, after the 2020 reduction in force.  And Plaintiffs did not suffer an adverse employment

action until the following year, after the vaccine mandate was enforced in the spring of 2022.

(*See, e.g.*, D.I. 38, Ex. H at ¶¶ 8-15)  The speculative nature of Plaintiffs' allegations about the

existence of a company-wide plan or policy undercuts Plaintiffs' assertion that members of the

proposed collective are similarly situated under any such policy.

Moreover, the breadth of the proposed collective runs counter to Plaintiffs' position that

its members are similarly situated.  *See Rusis v. Int'l Bus. Machs., Inc.*, 2020 WL 1151322, at

*2-3 (S.D.N.Y. Mar. 10, 2020).  Plaintiffs ask the court to conditionally certify a collective

action for:

> (1) all individuals that were employed or sought to be employed by AstraZeneca in
> its salesforce anytime between December 1, 2020 through the resolution of this
> action; and (2) who suffered adverse employment action — to include termination,
> were laid off, or applied for an open position and were rejected — while age 40 or
> older during the above stated period.

(D.I. 38 at 1)  This wide-ranging articulation of the proposed collective results in a "heavier-

than-usual burden" on Plaintiffs to show that Defendant's discriminatory policies infected all its

termination and hiring decisions, regardless of the circumstances of the termination or rejection.

*Rusis*, 2020 WL 1151322, at *2 (denying motion for conditional certification of a collective

action where the universe of former employees was too broad to be tied to a common policy or

plan).

To determine whether members of a proposed collective are similarly situated, courts in

the Third Circuit look to factors such as "whether the plaintiffs are employed in the same

corporate department, division and location; advanced similar claims of age discrimination;

sought substantially the same form of relief; and had similar salaries and circumstances of

employment." *Ruehl*, 500 F.3d at 388 n.17.  Plaintiffs' proposed collective encompasses former employees who were terminated for any reason, including those terminated for cause or poor performance, those laid off during a 2020 reduction in force, and those terminated for failure to comply with the 2022 vaccine mandate.  These termination decisions were made by different managers in different locations.  (D.I. 38, Exs. E-J)  Without any cohesive link between Plaintiffs' roles, their locations, and the circumstances surrounding their departure, "the collective Plaintiffs seek to establish is disparate and heterogeneous, incapable of meeting even the lenient evidentiary burden for issuing notice" to the proposed collective.  *Rusis*, 2020 WL 1151322, at *3 (denying conditional collective action certification where "[t]he decisions referenced by Plaintiffs' affiants alone implicate a variety of legal theories, including constructive discharge, adverse employment actions, pretextual 'for-cause' terminations, mass layoffs, and retaliation.").  Consequently, I recommend that the court deny without prejudice Plaintiffs' motion for conditional certification of the collective action.

## III.   CONCLUSION

For the foregoing reasons, I recommend that the court GRANT Defendant's motion to dismiss (D.I. 22); GRANT Defendant's motion to strike (D.I. 25); and DENY without prejudice Plaintiffs' motion for conditional certification of the collective action (D.I. 37).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The objections and responses to the objections are limited to ten (10) pages each.  The failure of a party to object to legal conclusions may result in the loss of the right

to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: February 21, 2024

Sherry R. Fallon
United States Magistrate Judge