IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT WILHOIT, CHRISTINA HARGROVE, GIJI MISCHEL DENNARD, JULIE MAGERS, MEGAN SMALL, REGINA RUSGROVE, and LISA MARSHALL, individually, and on behalf of the class and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ASTRAZENECA PHARMACEUTICALS LP,<br><br>Defendant. | Civil Action No. 22-1634-GBW-SRF |

## MEMORANDUM ORDER

Pending before the Court is the Report and Recommendations ("R&R") of Magistrate Judge Fallon, D.I. 65, advising the Court to: (1) grant Defendant AstraZeneca Pharmaceuticals, LP's ("Defendant" or "AstraZeneca") partial motion to dismiss the First Amended Complaint ("FAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6); (2) grant Defendant's motion to strike the FAC's Title VII class claims and the ADEA collection action claims; and (3) deny Plaintiffs Robert Wilhoit, Christina Hargrove, Julie Magers, Megan Small, Regina Rusgrove, and Lisa Marshall's (collectively "Plaintiffs") motion to conditionally certify a collective action under the Fair Labor Standards Act ("FSLA") with leave for Plaintiffs to amend. Plaintiffs object to the R&R. D.I. 67. Having reviewed the R&R and all related briefing, the Court overrules Plaintiffs' objection and adopts the R&R in whole.

1

I. **STANDARD OF REVIEW**[1]

A district court may modify or set aside any part of a Magistrate Judge's order that is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). When a party objects to the recommendations of the Magistrate Judge, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72.

II. **DISCUSSION**

   a. **Defendant's Partial Motion to Dismiss**

Count III of the FAC asserts claims against Defendant for disparate treatment and/or failure to accommodate members of Plaintiffs' proposed Natural Immunity Religious Class under Title VII of the Civil Rights Act of 1964. The R&R instructs the Court to dismiss Plaintiffs' disparate treatment claim "because the FAC does not contain any plausible allegations suggesting that nonmembers of the protected class were treated more favorably than Plaintiffs in accordance with the third element of the claim." D.I. 65 at 6. Additionally, the R&R recommends that the Court dismiss Plaintiffs' claim for failure to accommodate the Natural Immunity Religious Class because "Plaintiffs' allegations about natural immunity are not religious beliefs." *Id.* at 8. For the following reasons, both recommendations are adopted.

---

[1] The Court writes for the benefit of the parties who are already familiar with the pertinent background facts.

### i. Disparate Treatment

In support of their claim for disparate treatment under Title VII, Plaintiffs allege that, "[b]efore instituting the Mandate, AstraZeneca had actual knowledge through its business records that a very large portion of its employees who could not receive a vaccine due to religious objections possessed natural immunity." D.I. 19, ¶ 276. According to Plaintiffs, through business records and the company's "hyper-specialized knowledge on the issue of natural immunity," AstraZeneca knew "that its vaccinated employees were contracting COVID-19 at similar and likely higher rates—especially in January, February, March, and April of 2022—than unvaccinated employees who possessed natural immunity." *Id.*, ¶¶ 278-279. Thus, Plaintiffs allege that "the sincerity and religious nature of their beliefs in conflict with the Mandate should have never been evaluated or questioned in the first place." *Id.*, ¶ 280.

As the R&R notes, a prima facie case for disparate treatment requires allegations that: (1) the plaintiff employee is "a member of a protected class," (2) the employee "suffered an adverse employment action," and (3) "nonmembers of the protected class were treated more favorably." *Abramson v. William Paterson Coll of N.J.*, 260 F.3d 265, 281–82 (3d Cir. 2001); D.I. 65 at 5-6. The R&R finds that Plaintiffs fail to allege sufficient facts to support the final element of a prima facie disparate treatment claim by omitting "any plausible allegations suggesting that nonmembers of the protected class were treated more favorably than Plaintiffs in accordance with the third element of [a] [disparate treatment] claim." D.I. 65 at 6.[2] The Court agrees.

---

[2] Unlike Plaintiffs, the Court does not interpret the R&R as holding that Plaintiffs fail to plead the first element of a disparate treatment claim or fail to show religious sincerity. *See* D.I. 67 at 8 (arguing that "[c]ontrary to the R&R's conclusions, the first element of a prima facie claim for a disparate treatment claim does not require a showing of religious sincerity or religious objections to the COVID-19 vaccine mandate . . . .").

Count III of the FAC alleges that "Plaintiffs Wilhoit, Dennard, Magers, and Marshall were treated differently than similarly situated secular employees who were immunized through vaccination [and] . . . were treated differently than similarly situated secular employees who were immunized through vaccination." D.I. 19, ¶¶ 284-85. Plaintiffs concede, however, that natural immunity status is not a protected category under Title VII. D.I. 29 at 3; *see also Gage v. Mayo Clinic*, 2023 WL 3230986, at *2 (D. Ariz. May 3, 2023) (finding that employees with "natural immunity" are not a protected group under Title VII). While Plaintiffs assert that their protected status instead derives from their membership in a protected religious class *in combination with* their natural immunity to COVID-19,[3] Title VII only prohibits discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

Thus, to allege disparate treatment based on religious discrimination, "Plaintiffs must show that they were 'singled out and treated less favorably than others similarly situated on the basis of' their religious beliefs." *Doe(s) v. Pittsburgh Reg'l Transit*, No. 2:22-CV-01736, 2023 WL 4867850, at *8 (W.D. Pa. July 31, 2023) (internal citations omitted). A claim that "AstraZeneca engaged in an intentional, company-wide, and systematic policy, pattern, and/or practice of religious discrimination against the Natural Immunity Religious Class"[4] therefore requires Plaintiffs to plead facts showing that Defendant treated unvaccinated employees with natural immunity and claiming a religious exemption, like Plaintiffs, less favorably than non-religious employees with natural immunity who also failed to comply with the Company's vaccine mandate. *See Gage*, 2023 WL 3230986, at *2.

The FAC, however, does not allege facts showing that similarly situated employees who are non-members of Plaintiffs' protected religious class were subject to favorable treatment. *See*

---

[3] D.I. 29 at 3.
[4] D.I. 19, ¶ 288.

4

D.I. 29 at 11-12 (arguing that Plaintiffs "are not required to show non-members of the protected class were treated more favorably to generate an inference of unlawful discrimination"). As noted above, a prima facie disparate treatment claim requires allegations demonstrating that "nonmembers of the protected class were treated more favorably." *See supra* at 4 (citing *Abramson.*, 260 F.3d at 281–82). Thus, the Court agrees with Magistrate Judge Fallon that the FAC fails to state a disparate treatment claim under Title VII. D.I. 65 at 7; *see also Pittsburgh Reg'l Transit*, 2023 WL 4867850, at *8 (dismissing disparate treatment claim where "PRT's Policy required all employees to be vaccinated and nothing in the Amended Complaint or PRT's Policy indicates that employees with certain religious beliefs were treated differently than other employees"); *Gray v. Main Line Hosps., Inc.*, No. CV 23-0263, 2024 WL 643140, at *6 (E.D. Pa. Feb. 15, 2024) (dismissing disparate treatment claim where "Plaintiff does not identify any group that was treated more favorably than Plaintiff—which is the essence of a disparate treatment claim—based on religion").

Because Plaintiffs fail to plead sufficient facts to support a Title VII claim under a disparate treatment theory, the Court adopts Magistrate Judge Fallon's recommendation to dismiss the disparate treatment claim of Count IIII. *See* D.I. 65 at 5-7.

### ii. Failure to Accommodate

The FAC similarly asserts that "AstraZeneca's refusal to recognize [P]laintiffs Wilhoit, Dennard, Magers, and Marshall's natural immunity as a qualifying accommodation gives rise to an inference of unlawful discrimination . . . ." D.I. 19, ¶ 286. For the following reasons, the Court adopts Magistrate Judge Fallon's findings that Plaintiffs' assertions are insufficient to support a failure to accommodate claim under Title VII. *See* D.I. 65 at 8-10.

To establish a prima facie case for failure to accommodate under Title VII, Plaintiffs must allege sufficient facts showing that: (1) they "held a sincere religious belief that conflicted with a job requirement," (2) they "informed their employer of the conflict," and (3) they were "disciplined for failing to comply with the conflicting requirement." *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017). "[T]o adequately plead a 'religious belief'" under the first prong, the FAC must include "some facts regarding the nature of [Plaintiffs'] belief system[s], as well as facts connecting [their] objection[s] to th[ose] belief system[s]." *Maher v. Bayhealth Med. Ctr., Inc.*, No. CV 22-1551-RGA, 2024 WL 406494, at *3 (D. Del. Feb. 2, 2024) (internal citations omitted). However, "it is not sufficient merely to hold a 'sincere opposition to vaccination'; rather, [Plaintiffs] must show that the 'opposition to vaccination is a religious belief.'" *Brown v. Children's Hosp. of Phila.*, 794 F. App'x 226, 227 (3d Cir. 2020) (internal citations omitted).

In *Maher*, the court dismissed a failure to accommodate claim under Title VII where an employee accused the defendant employer of religious discrimination stemming from the employer's implementation of a COVID-19 vaccination mandate. *Maher*, 2024 WL 406494, at 3-4. In dismissing the claim, the court found plaintiff's viewpoint "that 'the vaccine is unnecessary for her because' she has 'a natural immunity to Covid' . . . [and plaintiff's] concern that the [COVID-19] vaccine may do more harm than good ... [were] medical belief[s], not [] religious one[s].'" *Id.*; *see also Brown v. Children's Hosp. of Philadelphia*, 794 F. App'x 226, 228 (3d Cir. 2020) (finding claim "that the vaccine was unnecessary [] because [plaintiff] scrupulously washed her hands ... is a medical belief, not a religious one").

Similarly, in this case, Plaintiffs' allege that "Defendant 'forced' Plaintiffs 'into a sham religious accommodation process, which, considering their natural immunity, should never have

6

occurred." D.I. 19, ¶ 281. Plaintiffs contend that the Mandate's religious accommodation process was unnecessary because "AstraZeneca knew by way of the fact that it has specialized knowledge of the relative strength of natural immunity because the company researches and develops vaccines, and because AstraZeneca had actual knowledge that its vaccinated employees were contracting COVID-19 at higher rates than unvaccinated religious employees who possessed natural immunity." *Id.* Plaintiffs also contend that "AstraZeneca's refusal to recognize plaintiffs Wilhoit, Dennard, Magers, and Marshall's natural immunity as a qualifying accommodation" is what gives rise to their Title VII claim for religious discrimination. *Id.*, ¶ 282. Just as in *Maher*, Magistrate Judge Fallon found that Plaintiffs' views on natural immunity reflect personal or medical beliefs that one's own immune system provides sufficient protection against COVID-19 without the need for vaccination. D.I. 65 at 8. The Court agrees with this finding.

Indeed, allegations made in the FAC confirm that natural immunity is unrelated to Plaintiffs' religious beliefs. The FAC asserts, for example, that data and research prove that natural immunity provides superior protection against the virus. *See id.*, ¶ 50 ("AstraZeneca knew or should have known through its internal tracking data and publicly available information that its vaccinated employees were contracting COVID-19 at similar or even higher rates than its unvaccinated employees (particularly those who possessed natural immunity)."). The FAC also notes that "AstraZeneca . . . has specialized knowledge of the relative strength of natural immunity because the company researches and develops vaccines." *Id.*, ¶ 281. Given these allegations, the Court agrees with Magistrate Judge Fallon that "Plaintiffs' beliefs about the

7

effects of natural immunity" are scientific and thus "separate from their religious objections to the vaccine mandate."[5] D.I. 65 at 9.

Accordingly, the Court adopts the R&R's recommendation dismissing Plaintiffs' religious accommodation allegations of Count III.

### b. Defendant's Motion to Strike Title VII Class Allegations

The R&R recommends that this Court grant Defendant's motion to strike the Title VII class certification allegations of Counts III and IV. *Id.* at 11-19. For the following reasons, the recommendation is adopted.

According to Magistrate Judge Fallon, the FAC fails to allege sufficient factual support to establish the "commonality" element of Rule 23(a). *Id.* at 13-14. Under the commonality element, a party seeking class certification must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The party must also show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *In re Citizens Bank, N.A.*, 15 F.4th 607, 612 (3d Cir. 2021). Magistrate Judge Fallon found that "[t]he FAC sets forth separate subsections for each Plaintiff identifying several different religious bases for objecting to the vaccine mandate." D.I. 65 at 13-14. While the objections include "guidance from the Holy Spirit;" "objections to abortion and/or aborted fetal cell lines;" and "an unwillingness to alter

---

[5] Finally, the Court agrees with the R&R that Plaintiffs' Title VII claims in Count III differ from Plaintiffs' Count IV Title VII claims only in Count III's assertions regarding natural immunity. D.I. 65 at 9. In fact, Plaintiffs concede that "Count IV ... in almost all material respects presents the same religious discrimination claims [Defendant] now moves to dismiss under Count III," with the major distinction being that "Count III pertains to religious employees who possessed natural immunity when they were terminated, while Count IV encompasses all religious employees [Defendant] terminated, regardless of natural immunity." D.I. 29 at 2-3.
Accordingly, the Court agrees with Magistrate Judge Fallon that "the impact of dismissing Count III is narrowly limited to Plaintiffs' assertion that their natural immunity objection is religious in nature." D.I. 65 at 9-10.

one's God-given immune system," Magistrate Judge Fallon found "little uniformity among the religious beliefs raised by each Plaintiff." *Id.* at 15-17. Thus, the R&R holds that a review of each Plaintiff's stated beliefs would require "an individualized analysis," making Plaintiffs' allegations unsuitable for class resolution. *Id.* at 17.

In objecting to the R&R, Plaintiffs argue that the FAC raises several questions common to all Plaintiffs by alleging that "AstraZeneca instituted a policy whereby Judeo-Christian based objections to receiving the mandated vaccines were singled out for worse treatment, and that medical exemption requests to the vaccination requirement were treated more favorably than religious exemptions." D.I. 67 at 5. Plaintiffs further contend that they "were discriminated against because they are members of a Christian belief system, not exclusively because they possessed religious beliefs in conflict with vaccination." *Id.* at 8. According to Plaintiffs, these allegation satisfy the commonality requirement by raising a question that "can be resolved in one stroke without individualized assessment" following some discovery. *Id.* The Court disagrees.

"Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S.Ct. 1184, 1191 (2013). Generally, commonality is found where "the contention is 'of such a nature ... that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *O'Gara ex rel. Est. of Portnick v. Countrywide Home Loans, Inc.*, 282 F.R.D. 81, 87 (D. Del. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). In *Doster v. Kendall*, 48 F.4th 613 (6th Cir. 2022), for instance, the court found that the commonality element of Rule 23(a) was satisfied where plaintiff alleged that defendant adopted "[a] discriminatory policy to deny all requests for religious exemptions, while granting thousands of medical and

9

administrative ones." *Id.* at 608; *U.S. Navy SEALs 1-26 v. Austin*, 594 F. Supp. 3d 767, 779 (N.D. Tex. 2022), *appeal dismissed as moot sub nom. U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666 (5th Cir. 2023) (finding commonality where "[e]xactly zero [religious] requests have been granted").

While Plaintiffs argue that a common question exists as to "whether AstraZeneca instituted a de facto policy to target individuals who objected to vaccination based on Judeo-Christian beliefs,"[6] the FAC shows that AstraZeneca did not adopt a de facto policy that uniformly denied religious accommodation requests made by its Judeo-Christian employees. According to the FAC, "AstraZeneca [] granted and denied accommodations in an illogical fashion . . . ." D.I. 19, ¶ 94. As an example, the FAC notes that, in some instances, "employees who submitted *virtually identical exemption requests* were met with polar opposite outcomes." *Id.* (emphasis added). For instance, the FAC explains that Plaintiff Small worked closely with a friend, Nancy DiCenso, to draft religious objections to receiving a COVID-19. *Id.*, ¶ 95. According to the FAC, both women "submitted religious exemption requests that were very similar," and yet "Small was denied, [and] DiCenso was accommodated." *Id.* In highlighting the allegedly identical requests submitted by Plaintiff Small and Ms. DiCenso, Plaintiffs confirm that certain Judeo-Christian employees were granted accommodations. Thus, Plaintiffs' allegations, when taken as true, disprove Plaintiffs' arguments in briefing alleging a common question from AstraZeneca's implementation of a de facto policy targeting employees with Judeo-Christian beliefs. *See* D.I. 67 at 6; *Cf UnifySCC v. Cody*, No. 22-CV-01019-BLF, 2024 WL 333892, at *2, *5 (N.D. Cal. Jan. 29, 2024) (finding commonality where unvaccinated "employees with disability or medical exemptions were told" by the defendant employer "that

---

[6] D.I. 65 at 6.

they may be entitled to 'priority consideration'" over unvaccinated employees seeking religious employees because the policy "applied to every member of the class in the same way").

Plaintiffs argue that the FAC asserts "numerous other common questions," including:

> whether AstraZeneca's blanket undue burden rationale for terminating Plaintiffs was justifiable, given that the company provided reasonable accommodations such as masking and testing to every conceivable job role, . . . whether AstraZeneca's decision to mandate a medical procedure that was undisputedly known to be incapable of preventing infection and transmission of the targeted pathogen—and then terminating religious employees on counterfactual justifications—evidences class-wide discrimination, whether the company accommodated persons in the same roles based not any undue hardship analysis, but rather on where the employee worked (e.g., Texas and Florida), whether AstraZeneca applied a more favorable undue hardship standard to medical exemption requests than religious exemption requests, and whether the company utilized automated software or other discriminatory procedures that singled out Judeo-Christian beliefs for worse treatment than other religious belief systems.

D.I. 67 at 6-7. These questions are insufficient to support a finding of commonality, however, because each is based on no more than Plaintiffs' suspicions. For instance, the FAC alleges that secondary questions sent to employees who sought religious exemption from the Mandate "made it obvious that AstraZeneca was not individually assessing each request" and "appeared to have been autogenerated from some type of algorithmic process whereby pre-formatted questions were sent based on keywords the employee used in their exemption request, such as 'abortion,' 'fetal cells,' 'Holy Spirit,' 'Catholic,' 'church', and 'Christian.'" D.I. 19, ¶¶ 11, 81. Plaintiffs also allege that AstraZeneca seemingly approved "almost all, if not all, of its Florida and Texas based employees" who sought religious exemption. Plaintiffs claim that a review of AstraZeneca's records will reveal whether each of Plaintiffs' allegations is true. *Id.*, ¶ 11.

Rule 23, however, "does not set forth a mere pleading standard," and the "party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must

be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350. The Supreme Court has warned that "a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982). Here, the Court is not persuaded by Plaintiffs' allegations that the "numerous other" common questions predominate over all members of Plaintiffs' proposed class. Indeed, despite Plaintiffs' claims otherwise, this case is unlike *UnifySCC*, where a court found commonality when presented with undisputed evidence that defendant "granted exemptions from a [COVID-19] Mandate different accommodations based on a tiered system ("Risk Tier System")" pursuant to which "[p]ositions were sorted into lower-, intermediate-, or high-risk tiers." 2024 WL 333892, at *2. In this matter, Plaintiffs speculate as to the manner in which AstraZeneca reviewed exemption requests, and Plaintiffs assert their belief that the Mandate targeted employees of Judeo-Christian faith. Yet, Plaintiffs present no direct evidence of any policy that delegated religious requests for exemptions. Without such evidence, "[a]ny finding by this Court that [P]laintiffs had satisfied commonality requirements could be made only 'on the basis of speculation or larger leaps of inference' than permitted by the record here." *Bostron v. Apfel*, 182 F.R.D. 188, 195 (D. Md. 1998) (internal citations omitted).

      Similarly, the Court is unpersuaded by Plaintiffs' claims that they will "conclusively resolve" the first and fourth elements of class certification after discovery. D.I. 34 at 7-9. With respect to the first element, Plaintiffs concede that "it is certainly conceivable that [Defendant] did in fact determine after individually reviewing exemption requests that select employees *lacked* religious sincerity" and note that discovery is necessary to determine whether

"AstraZeneca knew vaccinated employees were contracting COVID-19 at the same, similar, or higher rates than the unvaccinated religious employees it terminated, yet justified the mass termination of religious employees on 'workplace safety' grounds." *Id.* at 7 (emphasis in original). Given this concession, the Court agrees with Magistrate Judge Fallon that Plaintiffs claims of commonality under the first element are speculative and rely wholly on future "extensive discovery." D.I. 65 at 17-18.

Similarly, with respect to the fourth element, the Court again agrees with Magistrate Judge Fallon that Plaintiffs make "speculative allegations." *Id.* at 18. Specifically, Plaintiffs contend that "AstraZeneca was motivated to remove as many religious employees as it possibly could and utilized the Mandate as a convenient vehicle to accomplish its discriminatory goal." D.I. 34 at 8. While Plaintiffs argue that "[i]t is irrelevant that AstraZeneca also terminated unvaccinated employees without religious beliefs [because] those employees were not protected under Title VII," such evidence undermines Plaintiffs' claim that AstraZeneca implemented the Mandate merely as the means to accomplish its "discriminatory goal." *See* D.I. 67 at 9. Plaintiffs' claim is further negated, as noted above, by Plaintiffs own allegations recognizing that some employees with identical religious beliefs to Plaintiffs were granted accommodations and allowed to continue their employment despite their unvaccinated status. *See supra* at 10.

Given the above, the Court does not find that Plaintiffs "have plausibly alleged the circumstances here demonstrate AstraZeneca was motivated to remove as many religious employees as it possibly could." D.I. 34 at 8. Further, because Plaintiffs again concede that commonality under the fourth element relies on extensive discovery to determine whether "AstraZeneca's vaccinated employees were contracting COVID-19 at the same or higher rates than unvaccinated religious employees during the relevant timeframe," *id.*, the Court agrees with

Magistrate Judge Fallon that Plaintiffs' allegations call for an individualized inquiry into Defendant's records, making the claims unamenable to class-wide resolution. D.I. 65 at 18.

Thus, for the reasons discussed above, the Court adopts Magistrate Judge Fallon's recommendation striking Plaintiffs' class certification allegations at Counts III and IV.

### c. **Plaintiffs' Motion for Conditional Certification of the Collective and Defendant's Motion to Stike the Collective Action Allegations**

The R&R instructs this Court to grant Defendant's motion to strike Plaintiffs' conditional certification and deny Plaintiffs' motion for conditional certification of the collective because Plaintiffs fail to show a sufficient nexus between the alleged statements about cultivating a younger workforce and the adverse employment action suffered by the proposed collective. *Id.* at 19-22. For the following reasons, the Court agrees.

To assert a collective action pursuant to the FLSA, a party must show that "those who purport to join the collective action are 'similarly situated' as intended by the statute." *Halle v. Penn Allegheny Health Sys. Inc*, 842 F.3d 215, 224 (3d Cir. 2016). Third Circuit courts embrace a two-step process for determining whether a case qualifies for collective treatment. Relevant here is the first step, the conditional certification step, wherein Plaintiffs must make "a 'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected [the named Plaintiffs] and the manner in which it affected the proposed collective action members." *Id.* (internal citations omitted).

While the FAC highlights discriminatory statements made by two AstraZeneca employees as evidence of a corporate-wide policy to lower the average age of its workers,[7] the FAC does not allege that either employee "was directly involved in the hiring and termination

---

[7] D.I. 19, ¶¶ 4-5.

14

decisions." D.I. 65 at 20. Thus, the FAC provides no factual nexus connecting those statements with the adverse employment actions suffered by the proposed collective, which were made by individual managers.[8]

Further, the "speculative nature of Plaintiffs' allegations about the existence of a company-wide plan or policy undercuts Plaintiffs' assertion that members of the proposed collective are similarly situated under any such policy." *Id.* at 21. While Plaintiffs allege that "AstraZeneca took active steps—with tangible results in December of 2020— . . . by terminating, laying off, or denying job opportunities to age 40 and older,"[9] this alleged reduction in force occurred several months before the discriminatory statements made by Mr. Henry and Mr. Hartman and over one year before Plaintiffs were terminated in the Spring 2022 pursuant to

---

[8] In response to the R&R, Plaintiffs argue that "there is competent evidence demonstrating Mr. Henry and Mr. Hartman were corporate executives with heavy influence over the hiring and firing decisions at issue . . . ." D.I. 67 at 2. In support of this claim, Plaintiffs cite the declaration of Lisa Marshall (the "Marshall Declaration"). *Id.* The Marshall Declaration, however, asserts only that Mr. Henry "set the corporate policies for Inclusion and Diversity initiatives, company-wide" and "had significant influence and authority company-wide, including for sales' teams, had significant influence and authority company-wide, including for sales' teams." *See* D.I. 58, ¶¶ 4-10. It does not establish Mr. Henry's involvement in hiring and termination decisions. Similarly, sworn testimony cited from the Declaration of Christina Hargrove (the "Hargrove Declaration") holds that Ms. Hargrove "believe[s] that [she] was passed over for [a] role in furtherance of AstraZeneca's policy to cultivate a younger work force" and that "Mr. Hartman was considered an Executive or Executive level manager by lower-level employees," like Ms. Hartman, and "was known to have significant influence over lower-level managers due to his position and corporate-wide presentations, in which he outlined corporate policy for sales teams across the country." *See* D.I. 57, ¶¶ 15-17. Again, this testimony does not allege or establish Mr. Hartman's involvement in the company's hiring and firing policies. *Cf Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1097 (3d Cir. 1995) (highlighting "statements of a person involved in the decision-making process that reflect a discriminatory...animus of the type complained of in the suit"). Without allegations showing Mr. Hartman and Mr. Henry participation in the employment policies challenged in this matter, Plaintiffs' link between their presentations and the subsequent termination decisions made by individual managers is based on "mere speculation" and thus insufficient to support Plaintiffs' claims that the members of the proposed collective were subject to the same discriminatory policies. D.I. 65 at 20 (citing *Duffy v. Sodexho, Inc.*, 2006 WL 3025958, at *3 (E.D. Pa. Oct. 20, 2006).

[9] D.I. 38 at 10.

15

the COVID-19 vaccine Mandate. Thus, the Court agrees with Magistrate Judge Fallon that the discriminatory statements identified by Plaintiffs were too remote from the relevant termination decisions to support Plaintiffs' claims of a discriminatory policy. *Id.* at 20-21.

The Court also agrees that "the breadth of the proposed collective runs counter to Plaintiffs' position that the members of the proposed collective are similarly situated." *Id.* at 21. Plaintiffs' collective class covers "all individuals that were employed by AstraZeneca in its salesforce anytime between December 1, 2020, through the resolution of this action" and "who suffered adverse employment action—to include termination, were laid off, or applied for an open position and were rejected—while age 40 or older . . . ." D.I. 38 at 1. Such a broad collective would thus include applicants aged 40 or older who sought positions they were wholly unqualified to hold. *See Rabin v. PricewaterhouseCoopers LLP*, No. 16-CV-02276-JST, 2018 WL 3585143, at *5 (N.D. Cal. July 26, 2018) (finding that "[t]he difference between [plaintiffs] on the one hand, and facially unqualified applicants on the other, prevents the Court from conditionally certifying the class").

While Plaintiffs note that conditional certification is generally subject to a lenient standard,[10] the Court agrees with Magistrate Judge Fallon that, because Plaintiffs seek to certify a broad collective of nationwide employees or applicants, Plaintiffs must meet a "heavier-than-usual burden" of showing "that Defendant's discriminatory policies infected all its termination and hiring decisions, regardless of the circumstances of the termination or rejection." D.I. 65 at 21 (internal quotations omitted); *Rusis v. Int'l Bus. Machines Corp.*, No. 18-CV-8434 (VEC), 2020 WL 1151322, at *2 (S.D.N.Y. Mar. 10, 2020) ("Plaintiffs propose a nationwide collective encompassing all former employees over the age of forty who left IBM after July 2017. . . .

---

[10] D.I. 67 at 3.

16

[Thus,] Plaintiffs bear a heavier-than-usual burden (compared to requests to provide notice to a more cabined putative collective) of showing that a discriminatory nationwide policy or plan infected all of IBM's employment separation decisions, regardless of the context or circumstances of separation.").

Yet, even under the more lenient standard asserted by Plaintiffs, the Third Circuit instructs district courts to consider "whether the plaintiffs are employed in the same corporate department, division and location; whether they advanced similar claims of age discrimination; [and whether they] had similar salaries and circumstances of employment. *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 388 n.17 (3d Cir. 2007). Where a plaintiff makes "no showing, beyond conjecture and the individual affiants' beliefs, that a unifying scheme [] links the potential members of the collective to one another despite vast differences in their jobs, locations, and circumstances surrounding their departure from [the company]," this lenient standard is not satisfied. *See Rusis*, 2020 WL 1151322, at *3. Thus, without a showing beyond Plaintiffs' belief that AstraZeneca may have adopted a company-wide policy or plan to lower the age of its employees, the Court, like Magistrate Judge Fallon, finds that "the collective Plaintiffs seek to establish is . . . incapable of meeting even the lenient evidentiary burden for issuing notice' to the proposed collective." D.I. 65 at 22 (citing *Rusis*, 2020 WL 1151322, at *3).

Given the above, the Court adopts Magistrate Judge Fallon's recommendation denying Plaintiffs' motion for conditional certification of the collective action without prejudice and granting Defendant's motion to strike the FAC's collective action allegations.

III. **CONCLUSION**

***

Therefore, at Wilmington this 5th day of June 2024, **IT IS HEREBY ORDERED** that:

1. Magistrate Judge Fallon's Report and Recommendation, D.I. 65, is ADOPTED;

2. Plaintiffs' Objection to the Report and Recommendation, D.I. 67, is OVERRULED;

3. Defendant's Motion to Dismiss, D.I. 22, is GRANTED;

4. Defendant's Motion to Strike, D.I. 25, is GRANTED; and

5. Plaintiffs' Motion for Conditional Certification of the Collective Action, D.I. 37, is DENIED without prejudice.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE